Nos. 09-17241 & 09-17551

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

———————————————

KRISTIN M. PERRY, et al.,

*Plaintiffs-Appellees*,

v.

ARNOLD SCHWARZENEGGER, et al.,

*Defendants*,

and

PROPOSITION 8 OFFICIAL PROPONENTS
DENNIS HOLLINGSWORTH, et al.,

*Defendant-Intervenors-Appellants.*

———————————————

On Appeal From The United States District Court
For The Northern District Of California
No. CV-09-02292 VRW
Honorable Vaughn R. Walker

———————————————————————————————

**APPELLEES' OPPOSITION TO APPELLANTS' EMERGENCY MOTION FOR
STAY**

———————————————————————————————

THEODORE J. BOUTROUS, JR.
REBECCA JUSTICE LAZARUS
ENRIQUE A. MONAGAS
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
(213) 229-7804

THEODORE B. OLSON
MATTHEW D. MCGILL
AMIR C. TAYRANI
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

*Attorneys for Plaintiffs-Appellees Kristin M. Perry, Sandra B. Stier,
Paul T. Katami, and Jeffrey J. Zarrillo*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

FACTUAL AND PROCEDURAL BACKGROUND ................................................5

ARGUMENT ........................................................................................................12

I.      THIS Court Should Dismiss These Appeals Because It Lacks Jurisdiction To Review The District Court's Interlocutory Discovery Orders..................................................................................12

          A.     The Issue Conclusively Resolved By The District Court's Orders Is Inseparable From The Merits Of The Case..............14

          B.     Proponents' Claim Of First Amendment Privilege Is Readily Distinguished From Those Privilege Rulings This Court Has Treated As Collateral Orders..........................18

II.     THIS COURT SHOULD DENY PROPONENTS' MOTION FOR A STAY PENDING APPEAL. ................................................................................21

          A.     Proponents Have Not Satisfied The Prerequisites To A Stay Established By Fed. R. App. P. 8. ....................................21

          B.     Proponents Do Not Satisfy The Requirements For A Stay Pending Appeal. .......................................................................25

               1.     Proponents Have Not Shown A Likelihood Of Success On The Merits..................................................25

               2.     Proponents Have Not Failed To Demonstrate That They Will Be Irreparably Harmed By Disclosure Under The Protective Order Contemplated By The District Court ................................................................33

               3.     The Balance Of Hardships Weighs In Favor Of Plaintiffs........................................................................34

CONCLUSION ....................................................................................................35

i

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Adolph Coors Co. v. Wallace*, 570 F. Supp. 202 (N.D. Cal. 1983) ........................16

*Amoco Production Co. v. Gambell*, 480 U.S. 531 (1987) .......................................37

*Baker v. Adams County/Ohio Valley School Bd.*, 310 F.3d 927 (6th Cir. 2002) .................................................................................................................26

*Black Panther Party v. Smith*, 661 F.2d 1243 (D.C. Cir. 1981) .............................28

*City of Los Angeles v. County of Kern*, 462 F. Supp. 2d 1105 (C.D. Cal. 2006) .................................................................................................................34

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) ..........................13, 20

*Cumberland Tel. & Tel. Co. v. Louisiana Public Service Commission*, 260 U.S. 212 (1922) ....................................................................................24, 25

*Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) .......................13

*Dole v. Service Employees Union, AFL-CIO*, 950 F.2d 1456 (9th Cir. 1991) ................................................................................................ *passim*

*In re Marriage Cases*, 183 P.3d 384 (Cal. 2008) ....................................................5

*In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078 (9th Cir. 2007) ......................20

*Las Vegas v. Foley*, 747 F.2d 1294 (9th Cir. 1984) ................................................35

*McLaughlin v. Service Employees Union, AFL-CIO, Local 280*, 880 F.2d 170 (9th Cir. 1989) ...............................................................................................30

*Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989) ................................3

*Mohawk Indus., Inc. v. Carpenter*, No. 08-678 (argued Oct. 5, 2009) ....................21

*NAACP v. Alabama*, 357 U.S. 449 (1958) ........................................................30, 31

*Palmer v. Valdez*, 560 F.3d 965 (9th Cir. 2009) ....................................................28

*S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583 (8th Cir. 2003) ................34, 35

ii

*S.E.C. v. Dunlap*, 253 F.3d 768 (4th Cir. 2001) ....................................27

*SASSO v. Union City*, 424 F.2d 291 (9th Cir. 1970) ..............................33

*Sell v. United States*, 539 U.S. 166 (2003) ......................................14, 19

*Truckstop.net, LLC v. Sprint Corp.*, 547 F.3d 1065 (9th Cir. 2008) ...............13, 14

*United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000)....................13

*United States v. Philip Morris Inc.*, 314 F.3d 612 (D.C. Cir. 2003) .....................37

*Van Cauwenberghe v. Biard*, 486 U.S. 517 (1988) .......................3, 15, 17

*Washington v. Davis*, 426 U.S. 229 (1976) ......................................33, 34

*Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457 (1982) ............................18, 33

*Will v. Hallock*, 546 U.S. 345 (2006)....................................................21

*Winter v. Natural Res. Def. Council*, 129 S. Ct. 365 (2008) ............................27, 37

## Statutes

N.D. Cal. L. R. 7-1(a) ........................................................................24

N.D. Cal. L. R. 7-2(b) ........................................................................24

## Rules

Fed. R. Civ. P. 26(b)(1)......................................................................35

Fed. R. Evid. 801(d)...........................................................................36

## Other Authorities

16A Wright, Miller, et al., Federal Practice and Procedure § 3954 (3d
    ed.)...............................................................................................25

Am. Ass'n of Political Consultants Proposition 8 Case Study, 2009 Pollie
    Awards and Conference (Mar. 28, 2009), *at*
    http://www.youtube.com/watch?v= ngbAPVVPD5k ...........................................18

## INTRODUCTION AND SUMMARY OF ARGUMENT

This Court should deny Proponents' emergency motion for a stay pending appeal because the Court lacks jurisdiction over these appeals and, in any event, the Proponents fail to meet the standards for obtaining a stay.

The discovery orders at issue are neither final nor collateral orders, but rather purely interlocutory and not amenable to appellate jurisdiction. Indeed, Proponents' stay motion and the notices of appeal underlying it, are a transparent effort to obtain interlocutory review of the district court's denial of their 100-page motion for summary judgment. Central to Proponents' failed dispositive motion was their contention that Proposition 8 ("Prop 8")—notwithstanding the fact that it stripped gay men and lesbians in California of their fundamental constitutional right to marry that had been recognized by the State's highest court—was subject at most to rational basis review and that, under their version of that review, the actual motivations that led to enactment of a law are immaterial to the constitutional analysis. Prop 8 can survive, Proponents argued, so long as they can proffer any rational basis that conceivably could have been adopted by the bare majority of Californians that voted to strip their gay and lesbian neighbors of their right to marry.

That, indisputably, is a merits contention and the district court provisionally rejected it when it denied Proponents' motion for summary judgment. *See* SRR

107.[1]  The district court found that precedent concerning the level of scrutiny to be applied was "mixed" and "requires a complete factual record for decision making." SR 101.  The district court also rejected Proponents' contention that, under rational basis review, the question of the actual motivation of the electorate is legally irrelevant, finding it "rest[s] on the assumption that the Court accepts that Proposition 8 is supported by legitimate state interests."  SRR 107.  The district court concluded that the question whether Proposition 8 was enacted with discriminatory intent required further factual development and thus was inappropriate for summary judgment.  *Id.*

Their motion denied, Proponents did not ask the district court to certify its ruling for interlocutory review under 28 U.S.C. § 1292(b).  Instead, they have attempted to smuggle their merits contention into this Court under the guise of a challenge to an assertedly "collateral" discovery order.  To do that, Proponents have sought to convert a simple dispute about whether Plaintiffs' discovery is "reasonably calculated to lead to the discovery of admissible evidence,"  Fed. R. Civ. P. 26(b)(1), into a claim of First Amendment privilege and to obtain a stay on that basis.  This effort fails.

Proponents' conception of the First Amendment privilege against discovery has two components:  It begins with the truism that discovery of a person's non-

---

[1]  "SRR" refers to Appellees' Supplemental Relevant Parts Of The Record filed contemporaneously with this Opposition.  "Doc" refers to entries in the district court PACER docket.

public communications inevitably may in some sense "chill" that person's future nonpublic communications as she adjusts her speech to accord with the reality that even her nonpublic communications might one day be revealed in legal proceedings. Proponents then argue that this "chilling effect" on speech imposed by ordinary civil discovery violates the First Amendment when the evidence sought to be discovered is legally irrelevant. On Proponents' view, the First Amendment forbids *any* discovery of a person's nonpublic communications in such circumstances.

The First Amendment's qualified privilege against discovery is not nearly as sweeping and inflexible as Proponents suggest. *See Dole v. Service Employees Union, AFL-CIO*, 950 F.2d 1456 (9th Cir. 1991). But even on Proponents' telling their claim of First Amendment privilege turns on their assertion that the evidence Plaintiffs seek is legally irrelevant to their claims for relief. *See* Stay Mot. 14.

The collateral order doctrine permits interlocutory review only of those issues "completely separate from the merits of the action." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 800 (1989). But as the district court recognized, the relevance inquiry Proponents ask this Court to undertake "is necessarily enmeshed in the merits" of Plaintiffs' constitutional challenge. RR 16. And interlocutory appeals that ask the reviewing court to "determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action" are not authorized by the collat-

eral order doctrine.  *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988).  This Court accordingly lacks jurisdiction over Proponents' appeals.

Moreover, Proponents' motion fails to demonstrate that they are entitled to a stay pending appeal.  As an initial matter, Proponents failed to comply with Fed. R. App. P. 8.  Proponents sought relief from the district court's November 11 privilege ruling without "mov[ing] first in the district court" or otherwise demonstrating that "moving first in the district court would be impractical."  Fed. R. App. P. 8(a)(1), (2)(A)(i).

Finally, Proponents fail to meet the requirements for a stay pending appeal.  Proponents are unlikely to prevail on their novel and sweeping claim of privilege.  They have misinterpreted the privilege's meaning and scope.  Their political consultants have publicly discussed—freely and at length—their strategy to persuade the electorate to endorse Prop. 8.  The district court demonstrated great sensitivity to the Proponents' First Amendment claims, commencing a document-by-document analysis to assess these claims.  Finally, they have failed to demonstrate that cooperation with discovery under the "attorney's eyes only" protective order contemplated by the district court will damage their associational interests.  And a stay pending appeal would be particularly inappropriate in this case because it will hamper significantly the parties' ability to build a factual record for the trial the district court has scheduled for January 2010.  Plaintiffs are to begin deposing the Proponents on December 1, and if a stay is granted, Plaintiffs will be put to a

4

choice either of going forward with those depositions without having had the opportunity to review the documents at issue here and with Proponents' counsel instructing the Proponents not to answer any questions about the strategy of the Yes on 8 campaign, or seeking a delay in the trial and prolonging the suffering of the Plaintiffs, who are irreparably harmed each day they are prohibited from marrying. That tips the balance of hardships decisively in favor of Plaintiffs and precludes a stay pending appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are gay and lesbian residents of California who are involved in long-term, serious relationships with individuals of the same sex. They desire to marry in order to demonstrate publicly their commitment to their partner and to obtain all the benefits that would come with the official recognition of their family relationship. Plaintiffs were denied marriage licenses, however, solely on the ground that they were seeking to marry an individual of the same sex.

In response, Plaintiffs filed suit in the Northern District of California challenging the constitutionality of Prop. 8, a ballot initiative that was narrowly passed by California voters in November 2008. SRR 130-149. Prop. 8—which provides that "[o]nly marriage between a man and a woman is valid or recognized in California"—was a direct response to a California Supreme Court decision that held that the state constitution protected the right of gay and lesbian individuals to

marry. *In re Marriage Cases*, 183 P.3d 384 (Cal. 2008). Plaintiffs contend that Prop. 8 violates the Due Process and Equal Protection Clauses of the United States Constitution because it impermissibly stripped gay and lesbian individuals of their right to marry and relegated them to the inherently unequal institution of domestic partnership. SRR 130-149. The State's chief law enforcement officer, the Attorney General, has conceded that Prop. 8 violates the U.S. Constitution. Doc #39.

Proponents are the official proponents on Prop. 8. Though none of their own rights are directly implicated by Prop. 8, they injected themselves into this case by moving to intervene as defendants. Doc. #8.

Because Plaintiffs are denied their constitutional right to marry each day that Prop. 8 remains on the books, they moved for a preliminary injunction immediately after filing their complaint. The district court denied that motion but, because it concluded further factual development is necessary to determine the constitutionality of Prop. 8, ordered expedited proceedings and a prompt trial. One of the factual issues that the district court identified as relevant to its constitutional inquiry is "whether Prop 8 was passed with a discriminatory intent," which, the court explained, "may require the record to establish . . . the voters' motivation or motivations for supporting Prop 8." SRR 137-138. The district court ordered an expedited fourteen week period of discovery closing on November 30, 2009, with a trial on the merits to commence on January 11, 2010. SRR 129.

In accordance with the district court's order, Plaintiffs immediately pro-

pounded discovery intended to investigate, inter alia, whether voters were moved to support Prop. 8 by impermissible considerations such as moral disapproval of gay and lesbian relationships or discriminatory animus toward gay and lesbian individuals. In particular, Plaintiffs sought to learn whether Proponents and their campaign strategists sought to activate impermissible and discriminatory considerations in voters to strip gay and lesbian Californians of their right to marry. To learn how Proponents and their public-relations consultants sought to persuade people to vote for Prop 8, Plaintiffs requested all versions of Proponents' various communications with members of the electorate between Proponents and third parties regarding Prop. 8. RR 265-66. To forestall any dispute over definitions in Plaintiffs' document request, Plaintiffs also requested communications relating to Prop. 8 between Proponents and any third party. RR 266.

Proponents have resisted the district court's effort to build a factual record on Prop. 8 from the outset of the litigation, urging that Plaintiffs' claims were absolutely foreclosed by precedent. Doc #139 at 9-10; *see also* Doc #172-1 at 30 ("there are no genuine issues of material fact that must be resolved at trial"; Proponents "are entitled to judgment as a matter of law"). In response to Plaintiffs' document requests, Proponents sought a protective order. Doc #175. But the protective order they sought was not one that would protect merely the confidentiality of their documents; Plaintiffs had already offered to enter into such an order. Doc #191-1 at 3. Rather, Proponents sought an order prohibiting ***any*** discovery into

documents or communications concerning Prop. 8, except to the extent the Proponents themselves had chosen to make a communication available to the general public. They contended that (1) any and all communications between the Proponents and any subset of the electorate (*e.g.*, registered Republicans), (2) any and all communications between Proponents and their campaign strategists, and, (3) indeed, any document that even identified the leadership of the Prop. 8 campaign was privileged from ***any*** disclosure by the First Amendment.[2]

On October 1, 2009, the district court granted the protective order in part and denied it in part. The court held that Plaintiffs' request for all communications relating to Prop. 8 between the Proponents and any third party was "overly broad" and directed Plaintiffs to "revise th[at] request and tailor it to relevant factual issues." RR 40. But the district court rejected Proponents' contention that the First Amendment precluded any discovery into the Proponents' nonpublic communications. The court explained that the "First Amendment qualified privilege proponents seek to invoke, unlike the attorney-client privilege, . . . is not an absolute bar against disclosure." RR 28. The Proponents' blanket assertion of privilege must

---

[2] Proponents later refined their position, agreeing to produce certain mass communications to potential voters but only to the extent the recipients of such communications had not previously formed an "associational bond" with the Proponents. RR 123 (22). Proponents most recent and description of the scope of the privilege they assert delineates ten categories and 23 sub-categories including "[d]ocuments that reveal the names or titles of ad hoc executive committee members of Protectmarriage.com," "[d]ocuments that reveal campaign strategy," and "[n]onpublic documents which relate to public communications with third parties." RR 46-48.

fail, the court reasoned, because "the First Amendment qualified privilege requires a balancing of the plaintiffs' need for the information sought against proponents' constitutional interests in claiming the privilege." RR 33. Though it denied Proponents' blanket claim of privilege, the court offered "to assist the parties in fashioning a protective order where necessary to ensure that disclosures through the discovery process do not result in adverse effects on the parties or entities or individual not parties to this litigation." RR 39-40.

Proponents noticed an interlocutory appeal of the district court's October 1 discovery order. Doc # 222 (No. 09-17241). On October 20, 2009, this Court ordered Proponents to show cause why that interlocutory appeal of a discovery order "should not be dismissed for lack of jurisdiction" because "this court generally lacks jurisdiction to review discovery orders." Order at 1, 2 (Oct. 20, 2009).

When Proponents noticed their first interlocutory appeal, they also moved the district court to stay its October 1 discovery order pending appeal. On October 23, 2009, the district court denied a stay. In addition to finding that a stay was inappropriate because Proponents "are unlikely to succeed on the merits" of their First Amendment privilege claim, the district court declined to stay its discovery order because it concluded that "the court of appeals lacks jurisdiction over the appeal." RR 12, 18. The district court explained that "the October 1 order was *not* a conclusive determination"—and therefore did not fall within the collateral order doctrine—"because proponents had not asserted the First Amendment privilege

over any specific document or communication."  RR 14.  "Proponents' blanket assertion of privilege was unsuccessful," the court explained, "but whether the privilege might apply to any specific document or information was not finally determined in the October 1 order."  RR 14.[3]

In response, Proponents offered to select a purportedly representative sample of documents that they claimed to be privileged under the First Amendment for the district court's *in camera* review.  The district court agreed to that proposal.  Proponents submitted 60 documents including ones that: "contain[] arguments to be presented to voters," "discuss[] a campaign targeted to certain voters," "discuss[] language to be used in conveying a message to voters," provide "focus group responses to various campaign themes," and offer "a post-election summary of successful themes conveyed to voters."  RR 4-6.

After undertaking that review, the district court issued an order on November 11, 2009, that concluded that "the qualified First Amendment privilege does not provide the documents much, if any, protection against disclosure," and directed Proponents to produce the 21 documents the court deemed responsive to the

---

[3]  Proponents complain that this is a "peculiar reading" of the district court's order, Show Cause Resp. 12, but as the district court explained. because the qualified First Amendment privilege (where it applies) requires a balancing of the harm of disclosure against the need for the evidence, that "balancing tends to limit or confine the First Amendment privilege to those materials that rather directly implicate rights of association." RR 33.  The privilege cannot be asserted in gross.

document request Plaintiffs had revised pursuant to the court's October 1 order. RR 9.

On November 13, 2009, Proponents noticed a second interlocutory appeal from "the orders of the Northern District of California . . . dated October 1, October 23, and November 11, 2009, to the extent they deny Defendant-Intervenors' Motion for a Protective Order and/or require the production of documents asserted as privileged under the First Amendment." Doc #253 (No. 09-17551). Without first filing a motion for a stay of the November 13 order in the district court, Proponents filed a motion in this Court to stay the district court's discovery orders.

Notwithstanding the district court's repeated denial of Proponents' request for a blanket prohibition on discovery of their non-public communications—and Plaintiffs' willingness to agree to an "attorneys-eyes only" protective order and the redaction of the names of Proponents' rank-and-file volunteers—Proponents persisted in their refusal to produce any of the disputed documents. Plaintiffs therefore requested that the district court direct immediate production of the documents. SRR 8. The district court referred the matter to Magistrate Judge Spero, who entered an order on November 19 that directed Proponents to produce documents responsive to Plaintiffs' discovery request on "a rolling basis to conclude not later than the close of fact discovery on November 30, 2009." SRR 6. In so doing, the court "reiterate[d] its view that appropriate protections can be implemented to re-

duce or eliminate many of the problems that proponents believe they will suffer as a result of the production of documents."  SRR 5.

To that end, the court provided that the "[n]ames of rank-and-file campaign volunteers and similarly situated individuals shall be redacted from all documents produced to plaintiffs" and further directed the parties to negotiate a protective order limiting dissemination of the discoverable documents.  SRR 6.  By November 20, Plaintiffs and Proponents had made substantial progress in negotiating an "attorneys eyes only" protective order.   Declaration of Matthew D. McGill ( McGill Decl.") (attached as Exhibit 1).   Proponents, however, construed this Court's November 20 temporary stay of the district court's November 13 privilege ruling as also staying Judge Spero's November 19 directive that the parties agree upon a protective order and, on November 21, terminated those discussions. McGill Decl. at ¶ 9.

## ARGUMENT

### I.    This Court Should Dismiss These Appeals Because It Lacks Jurisdiction To Review The District Court's Interlocutory Discovery Orders.

Under 28 U.S.C. § 1291, this Court's jurisdiction is limited to "final decisions of the district courts."  Because "discovery orders are interlocutory in nature," they are almost invariably "nonappealable" unless the party subject to that order refuses to comply and pursues an appeal from the imposition of sanctions.

*Truckstop.net, LLC v. Sprint Corp.*, 547 F.3d 1065, 1067 (9th Cir. 2008); *see also United States v. Fernandez*, 231 F.3d 1240, 1245 (9th Cir. 2000).

Although the overwhelming majority of discovery orders are nonfinal and, hence, non-appealable, the Supreme Court has held that under the collateral order doctrine a party may appeal from a "narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Both the Supreme Court and this Court, however, have "cautioned that th[is] 'narrow' exception should stay that way and never be allowed to swallow the general rule, that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Truckstop.net*, 547 F.3d at 1070 (quoting *Digital Equip. Corp.*, 511 U.S. at 868).

A discovery order is immediately appealable under the collateral order doctrine when it "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Sell v. United States*, 539 U.S. 166, 176 (2003) (internal quotation marks omitted). This "determination should not be made lightly because the principle that appellate review should be deferred pending the final judgment of the district court is central to our system of jurisprudence." *Truckstop.net*, 547 F.3d at 1068 (quoting *United States v. Amlani*,

169 F.3d 1189, 1192 (9th Cir. 1999)).  Failure to satisfy any of the three elements of the collateral order doctrine is fatal to an assertion of appellate jurisdiction. *Truckstop.net*,  547 F.3d at 1068.

This Court lacks jurisdiction over Proponents' premature appeals of the district court's discovery orders because the only issue resolved by those orders is inextricably intertwined with the merits of the case.

### A.    The Issue Conclusively Resolved By The District Court's Orders Is Inseparable From The Merits Of The Case.

This Court lacks collateral order jurisdiction over Proponents' appeals because the district court's discovery orders do not "resolve[ ] an important issue completely separate from the merits of the action."  *Sell*, 539 U.S. at 176.  As the Supreme Court has explained, "[a]llowing appeals from interlocutory orders that involve considerations enmeshed in the merits of the dispute would waste judicial resources by requiring repetitive appellate review of substantive questions in the case."  *Van Cauwenberghe*, 486 U.S. at 527-28.  As shown below, Proponents' invocation of the First Amendment privilege necessarily depends on their view of the merits of Plaintiffs' constitutional challenge to Prop. 8 and thus cannot be deemed "collateral" to the merits of Plaintiffs' claim.

As a threshold matter, one must be clear about what, precisely, the district court "conclusively determine[d]" in its October 1 and November 11 orders.  Taken together, the two orders held ***only*** that the First Amendment did not abso-

14

lutely preclude any and all disclosure of the 60 documents Proponents hand-picked for *in camera* review.[4] The district court did not consider any contention by Proponents that a protective order governing disclosure of Proponents' documents was insufficient to protect Proponents' First Amendment interests or activities. From the outset of this dispute Proponents' hard and fast position has been that ***any*** discovery of their nonpublic communications transgresses the First Amendment and that they are entitled to a "categorical shield against disclosure of the nonpublic information at issue." Show Cause Resp. 14. Indeed, Proponents contend that the First Amendment relieves them even of the "expense and burden" of asserting their privilege in the manner dictated by Fed. R. Civ. P. 26(b)(5). *Id.* 13. In their words, "the entire discovery inquiry is out of bounds under the First Amendment" *Id.*

That is significant because, as the district court explained, the "First Amendment qualified privilege proponents seek to invoke, unlike the attorney-client privilege, . . . is not an absolute bar against disclosure" but instead "requires a balancing of the plaintiffs' need for the information sought against proponents' constitutional interests in claiming the privilege." Doc # 214 at 5; *see also Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 208 (N.D. Cal. 1983). Thus the availability of the privilege turns on whether the harm from the particular disclosure out-

---

[4] The district court's October 1 order did not itself "conclusively determine[]" any claim of privilege, as demonstrated by the fact that Proponents subsequently appealed the denial of their claim of privilege. Doc #253 (09-17551). Proponents' appeal No. 09-17241 thus falls outside the collateral order exception to the final judgment rule and should be dismissed.

weighs the other party's need for the discovery, which in turns hinges in part on its legal relevance. And in many cases in which the First Amendment privilege is asserted, the relief the privilege garners is not a flat ban on discovery (as Proponents seek here) but rather a protective order that limits the potential harm of the discovery process. *See*, *e.g.*, *Dole*, 950 F.2d at 1462.

Proponents' position is that there is no protective order which can adequately protect their First Amendment interests because even the most limited disclosure necessarily results in "loss of confidentiality" and a "chill on future speech resulting from loss of confidence that private communications . . . will remain confidential." Stay Mot. 19 n.11. That discovery breaches confidentiality may well be true, but if it is, it is also true of virtually any civil litigant that is compelled to disclose nonpublic documents in a litigation proceeding.

In the balancing of interests the First Amendment privilege requires, an allegation of harm so thin as an abstract "loss of confidentiality" could arguably prevail only if the assertedly confidential information sought by the other party could not possibly lead to admissible evidence.

But, as the district court concluded, that relevancy inquiry "is necessarily enmeshed in the merits" of Plaintiffs' constitutional challenge and is therefore inappropriate for resolution in the collateral order setting. Doc # 237 at 6; *see also Van Cauwenberghe*, 486 U.S. at 528 (denial of a forum non conveniens motion is not a collateral order because in deciding such a motion a court must "determine

16

whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action").

Indeed, in their motion for summary judgment, Proponents argued at some length that they were entitled to judgment as a matter of law precisely because Plaintiffs' "claim that Proposition 8 . . . is the product of animus against gays and lesbians is . . . legally irrelevant." Doc # 172 at 101. According to Proponents, "[b]y preserving the traditional institution of marriage, Proposition 8 advances several legitimate—indeed, compelling—government interests" and, "[u]nder rational basis review, a law that bears some conceivable rational relation to any legitimate government interest—whether or not that interest actually motivated the lawmaking body, simply *cannot* run afoul of the Fourteenth Amendment." *Id.* at 102 (internal quotation marks omitted; emphasis in original).

In their brief opposing summary judgment, Plaintiffs responded that Proponents' approach was incorrect even under rational basis review as interpreted and applied by the Supreme Court in *Romer v. Evans*, 517 U.S. 620 (1996). Plaintiffs argued that several pieces of publicly available evidence—including a speech by the campaign manager for Yes on 8—that suggest that elements of the Yes on 8 campaign were in fact designed to appeal to the hostility of some voters toward gay and lesbian individuals. *See* Am. Ass'n of Political Consultants Proposition 8 Case Study, 2009 Pollie Awards and Conference (Mar. 28. 2009), *at* http://www.youtube.com/watch?v=ngbAPVVPD5k.     Plaintiffs    have    asserted

17

throughout this case that, under controlling Supreme Court precedent, such evidence is relevant to various aspects of their arguments that Prop. 8 violates the Equal Protection Clause. *See, e.g.*, *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 484-85 (1982) ("when facially neutral legislation is subjected to equal protection attack, an inquiry into intent is necessary to determine whether the legislation in some sense was designed to accord disparate treatment on the basis of racial considerations").

Thus far, the district court has signaled agreement with Plaintiffs' position that a discriminatory purpose is relevant to the inquiry whether Prop. 8 violates the Equal Protection Clause. *See* Doc # 214 at 4 ("the intent or purpose of Prop 8 is central to this litigation"). Whether the district court was right or wrong to reject Proponents' summary judgment contention that evidence of discriminatory purpose is irrelevant, that question is hardly "completely separate from the merits"; ***it is the merits***. *Sell*, 539 U.S. at 176. Accordingly, that question—even when it is asserted in connection with a claim of First Amendment privilege—is unreviewable as a collateral order.

### B. Proponents' Claim Of First Amendment Privilege Is Readily Distinguished From Those Privilege Rulings This Court Has Treated As Collateral Orders.

Proponents cite ***not one case*** in which this Court or another court of appeals has treated a denial of a claim of privilege under the First Amendment as a collateral order appropriate for interlocutory review. That is not surprising because the qualified First Amendment privilege is readily distinguishable from the absolute

privileges this Court and two others have found to be appropriate subjects of interlocutory appeals.

Proponents note—correctly—that this Court is among the minority of Circuits that permits interlocutory review of denials of certain evidentiary privileges. *See, e.g.*, *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1088 (9th Cir. 2007) (allowing immediate appeal of denial of attorney client privilege). But to date this Court has permitted collateral order appeals only of ***absolute*** privileges—which is to say privileges that do not depend in any way on an assessment of the other party's need for the assertedly privileged evidence. While this Court has viewed the "completely separate" prong of the collateral order doctrine as permitting "some potential overlap between the questions in the interlocutory appeal and those involved in the underlying suit," *id.* at 1088-89, in this instance, the overlap is neither "potential" nor modest.[5] Proponents claim of privilege rises or falls entirely upon their core merits contention that discriminatory intent is irrelevant to the analysis of Plaintiffs' constitutional claims. Again, in Proponents' words: "under controlling precedent, is the requested material relevant?" Show Cause Resp.

---

[5] Proponents suggest that *Napster* permits interlocutory appeals even when "application of the crime-fraud exception to the attorney-client privilege depend[ed] upon the characterization of [a] loan to Napster [and] the outcome of the underlying suit may depend upon this characterization." Show Cause Resp. 17 (quoting *Napster*, 479 F.3d at 1088). But Proponent's quotation is ***not*** (as they suggest) the Court's own reasoning, but rather its recitation of the "contention" of "the Lieber appellees." *Napster*, 479 F.3d at 1088.

18.  In no sense is Proponents' claim of privilege "independent of the cause itself."

*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949).[6]

Nor do the Supreme Court's decisions permitting interlocutory appeals of denials of immunity aid Proponents.  Proponents suggest that *Napster* "applied the reasoning" of the immunity decisions—that unless the denial of immunity from suit can be appealed before trial the immunity is effectively lost—and extended it to "the analogous context of privileges." Show Cause Resp. 18.  But the appellate jurisdiction analysis in  *Napster* did not rely on *any* immunity decisions.  And properly so because just one year earlier the Supreme Court had cautioned against the "lawyer's temptation to generalize" from its immunity decisions warning that such generalizations are "too easy to be sound and, if accepted, would leave the final order requirement of § 1291 in tatters." *Will v. Hallock*, 546 U.S. 345, 350-51 (2006).

Permitting collateral order appeals of denials of claims of First Amendment privilege of the sort brought by Proponents certainly would do the job.  Though the Proponents seek to place themselves in a preferred position by describing their speech as "political association and expression during elections," their's is not the only type of speech the First Amendment protects.  If a litigant can obtain an inter-

---

[6]  In any event, this Court's view of the collateral order doctrine as permitting appeals from denials of claims of attorney-client privilege is currently being reviewed by the Supreme Court.  *See Mohawk Indus., Inc. v. Carpenter*, No. 08-678 (argued Oct. 5, 2009).

locutory appeal simply by (1) observing that his nonpublic communications are protected by the First Amendment, (2) insisting that the nonpublic communications sought to be discovered are irrelevant, and (3) averring that any disclosure of his nonpublic information will damage his First Amendment interest in ***confidentiality***, then this Court soon will find itself on the receiving end of numerous interlocutory appeals of discovery orders that, although framed in terms of the First Amendment, will amount to nothing more than a garden-variety dispute about the ***relevance*** of requested discovery.[7]   The collateral order doctrine cannot be stretched so far.

## II.    THIS COURT SHOULD DENY PROPONENTS' MOTION FOR A STAY PENDING APPEAL.

### A.    Proponents Have Not Satisfied The Prerequisites To A Stay Established By Fed. R. App. P. 8.

Under Fed. R. App. P. 8, a party moving for a stay pending appeal "must show that moving first in the district court would be impracticable; or state that, a motion having been made, the district court denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action." Fed. R. App. P. 8(a)(2)(A).  This rule is based in sound judicial administration and

---

[7] One example:  Where a terminated employee brings a wrongful termination suit and seeks her supervisor's non-public communications relating to her, if the supervisor can insist that such communications are legally irrelevant, he can, like Proponents, claim a First Amendment privilege against the breach of the confidentiality of his nonpublic communications, and force the plaintiff to litigate the privilege claim in the court of appeals.

the prevailing view that "the court which is best and most conveniently able to exercise the nice discretion needed to determine this balance of convenience is the one which has considered the case on its merits, and therefore is familiar with the record." *Cumberland Tel. & Tel. Co. v. Louisiana Pub. Serv. Comm'n*, 260 U.S. 212, 219 (1922).

Proponents nowhere contend that it was impractical to move for a stay of the district court's November 11 order in the district court. Instead, they state they "had requested that the court stay any requirement that they produce the assertedly privileged documents pending review by this Court." Stay Mot. 6-7. Proponents' statement is factually correct but they fail to mention that the "request[]" was made in a letter—not a "motion" as required by Fed. R. App. P. 8—two weeks ***before*** the Court entered the order form which Proponents now seek a stay. That October 28 request, included in a letter seeking leave to submit assertedly privileged documents *in camera*, states, in its entirety: "If . . . the Court rejects our claim of privilege we request that the Court stay any order compelling production pending appeal or mandamus." RR 98.

In the Northern District of California, "[a]ny written request to the Court for an order must be presented" either by "motion" or "[s]tipulation of the affected parties." N.D. Cal. L. R. 7-1(a). A letter, it should go with out saying, is not a motion, particularly when it contains ***none*** of the required contents of a motion. *See* N.D. Cal. L. R. 7-2(b).

22

Proponents' failure to seek relief first in the district court is not merely a matter of idle formality. It violates the "cardinal principle with respect to stay applications under Rule 8." 16A Wright, Miller, et al., Federal Practice and Procedure § 3954 (3d ed. 1999). By failing to move for a stay in the district court (and thereby also failing to provide Plaintiffs an opportunity to oppose their requested relief) the Proponents have frustrated the district court's control of its discovery process, threatened its carefully calibrated management of this case, and imposed on this Court the burden of "exercis[ing] the nice discretion needed to determine this balance of convenience" except in the absence of the district court's "familiar[ity] with the record." *Cumberland Tel.*, 260 U.S. at 219.

If Proponents had sought a stay in the district court, the district court might have directed the parties to agree upon a protective order, as Judge Spero did on November 19. By the close of business on November 20, Proponents and the Plaintiffs had agreed upon most of the terms of that order. The only significant term on which Plaintiffs and Proponents had not yet reached agreement was a provision excluding certain persons from the "attorneys eyes only" provision of the protective order.

To answer Proponents' concern that their strategic plans could be divulged to their "political enemies," the Plaintiffs offered to exclude "any Counsel or employee who held an official position in any primarily formed ballot committee related to Proposition 8" or a similar organization circulating petitions to repeal Prop.

23

8 in 2010.  McGill Decl. ¶ 7.[8]  But Proponents terminated negotiations over the protective order, when this Court issued its temporary stay of the district court's November 11 privilege ruling.  McGill Decl. ¶ 9.

Entry of a protective order might have enabled the district court to better evaluate Proponents' claims of harm to their First Amendment interests by taking those allegations out of the abstract—*e.g.*, "[t]he harm . . . is the loss of confidentiality" (Stay Mot. 19 n.11)—and analyzing the potential harm that might arise from the disclosures that actually would occur in the litigation.  But by seeking relief first in this Court, Proponents short-circuited the process, precluding the district court from undertaking that analysis and fashioning relief (if any) appropriate to its result.

This case thus exemplifies precisely why the Federal Rules of Appellate Procedure generally require those seeking a stay to move first in the district court. Proponents should not be rewarded for their refusal to comply with those rules; their motion for a stay pending appeal should be denied.  *See, e.g.*, *Baker v. Adams County/Ohio Valley Sch. Bd.*, 310 F.3d 927, 930 (6th Cir. 2002) (per curiam);

---

[8]  Proponents had sought a much broader exclusion, barring any counsel or employee who has "previously been involved [or] has [] intention in the future of being involved in any organization, association, campaign, group, coalition, or other entity that advocated for or against Proposition 8 or for or against any other ballot initiative, constitutional amendment, or state law (regardless of the state) that advocated for or against same-sex marriage."  McGill Decl. ¶ 6.

*S.E.C. v. Dunlap*, 253 F.3d 768, 774 (4th Cir. 2001); *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 38 (2nd Cir. 1993).

> **B.    Proponents Do Not Satisfy The Requirements For A Stay Pending Appeal.**

To obtain a stay pending appeal, Proponents must demonstrate that they are "likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of . . . relief, that the balance of equities tips in [their] favor, and that [the stay] is in the public interest." *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374 (2008). Proponents cannot satisfy any of these requirements.

> **1.    Proponents Have Not Shown A Likelihood Of Success On The Merits**

For at least four reasons, Proponents are unlikely to prevail on their claim that the First Amendment bars all discovery of their nonpublic communications.

*First*, Proponents have voluntarily chosen to be a party to this litigation. While it is generally true that the First Amendment privilege is available to both plaintiffs and defendants, as Proponents seemed to acknowledge in their briefing in the district court because a party voluntarily chooses to become a party to a litigation presumably also can withdraw from the litigation to avoid unwanted discovery, the First Amendment privilege is available to voluntary parties only to the extent that the discovery violates the doctrine of unconstitutional conditions. Doc #197 at 12 (arguing that extending First Amendment privilege to Proponents is "in keeping with the longstanding 'unconstitutional conditions' doctrine"). For exam-

ple, when a plaintiff sues to vindicate a constitutional right and through discovery is put to the choice of either allowing an intrusion into his First Amendment rights or giving up the right on which he sued, the unconstitutional conditions doctrine is implicated. *See Palmer v. Valdez*, 560 F.3d 965, 972 (9th Cir. 2009) ("the government cannot condition a benefit on a basis that infringes upon an individual's constitutionally guaranteed interest"). Thus the privilege was available to the Black Panther Party where the government's discovery into their membership put it to the Hobson's choice of forsaking their claims under 28 U.S.C. § 1985 or forsaking their First Amendment associational freedoms. *Black Panther Party v. Smith*, 661 F.2d 1243, 1266-67 (D.C. Cir. 1981).

But very much unlike the Black Panthers, the Proponents have no rights particular to themselves at stake in this litigation. Proponents claim only a "right to defend in Court a ballot initiative they sponsored and was passed by the majority of voters" (Doc #197 at 13) and thus are essentially acting as volunteer private attorneys general. Because the Proponents can exit this litigation without sacrificing any right accorded to them by law, they should not be heard to argue that Plaintiffs' discovery violates their associational freedoms. If they do not wish to comply with Plaintiffs' routine document requests, they can withdraw their intervention. But where they choose to litigate, they must do so on the same terms as other litigants.

*Second*, Proponents have failed to meet their *prima facie* burden of demonstrating that disclosure of the assertedly privileged documents will harm their associational interests.

*Dole v. Service Employees Union*, 950 F.2d 1456 (9th Cir. 1991) is this Court's leading case on the application of the First Amendment privilege against discovery, yet Proponents barely mention, much less apply it.  That decision explains that a party asserting a First Amendment privilege must come forward with "objective and articulable facts"—not merely "broad allegations and subjective fears"—demonstrating either "(1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights."  *Dole*, 950 F.2d at 1460.

Proponents' dire predictions that Plaintiffs' document requests will "profoundly chill the exercise of speech and associational freedoms in future initiative elections," Stay Mot. 10, do not carry that burden.  Indeed, the predictive judgments of Proponents' counsel are strikingly similar to the union lawyer's "argument—not facts—concerning the impact of an unrestricted administrative review of the minutes of union meetings" that this Court found insufficient to sustain the burden in *McLaughlin v. Service Employees Union, AFL-CIO, Local 280*, 880 F.2d 170, 175 (9th Cir. 1989).

After a remand, this Court in *Dole* found that declarations offered by union members stating that "I will not attend any more union meetings" were sufficient to meet this burden. 950 F.2d at 1460. But the declarations appended to Proponents' motion for a protective order are far more equivocal. The Prentice declaration, for example, stated "I would have communicated differently. . . . I would have been more guarded." RR 260. Similarly, the Jansson declaration stated that participation in discovery might "alter how I communicate in the future." RR 320. Likewise, the declaration offered by Frank Schubert, the chief campaign consultant for the Yes on 8 campaign, states that discovery could "change the way we engage in political speech and campaigning." RR 309. Missing from these declarations, however, is any clear statement—like that offered by the union members in Dole—that, if the Proponents are compelled to participate in discovery, there are specific expressive activities they will no longer undertake. Thus, none of Proponents' declarations demonstrates that Plaintiffs' proposed discovery will have the "*practical* effect 'of discouraging' the exercise of constitutionally protected rights." *Dole*, 950 F.2d at 1460 (quoting *NAACP v. Alabama*, 357 U.S. 449, 461 (1958)).

Nor do Proponents' declarations ever draw a connection between the harms they supposedly fear and the specific disclosures at issue ***in this case***. And for that reason, the district court concluded that "it is not at all clear that the discovery sought here materially jeopardizes" Proponents' expressive interests. RR 29. Indeed, the court found that the harms identified in Proponents' declarations were

28

just as likely the result of the "substantial financial disclosures required by California law" of ballot initiative sponsors and a "striking disclosure concerning campaign strategy" voluntarily offered by Proponents' own campaign consultant. RR 33; *see also* SER 124 ("We needed to convince voters that gay marriage was not simply 'live and let live'—that there would be consequences if gay marriage were to be permanently legalized.").

*Third*, Proponents' fail to demonstrate why Plaintiffs' commitment to permit redaction of the names of rank-and-file members and donors, and production under an Attorneys Eyes Only protective order is insufficient to protect their associational interests. First Amendment interests against compelled disclosure are at their zenith where a party seeks to uncover the identities of the association's rank-and-file members, *see*, *e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 460-63 (1958), and as the district court recognized, Plaintiffs accordingly "are not seeking disclosure of membership lists." RR 28. An association's "interest in maintaining the confidentiality of communications" is much more attenuated when the association is acting in a legislative capacity—and therefore is subject to numerous state law disclosure requirements—and even more so when the association already has disseminated a "candid description of the . . . campaign's strategy." RR 34.

Even still, in an abundance of caution, the district court allowed Proponents to cherry-pick the documents that best exemplified their need for an absolute prohibition on discovery and submit them for *in camera* review. After examining the

29

documents for itself, the district court reiterated its conclusion that disclosure of these documents under a protective order would not substantially harm Proponents' associational interests.  RR 4-6.

Other than a fear of disclosing documents to persons preparing for a "political rematch"—a concern which, to the extent it is directed at Plaintiffs' counsel is badly misplaced, but that the Plaintiffs nevertheless were addressing by negotiating an exclusion from the protective order (McGill Decl. ¶ 7)—Proponents offer no explanation why an attorneys eyes only protective order is insufficient to safeguard their remaining interest in preventing the public disclosure of their communications.  And *Dole* strongly suggests that there is no such reason.  In that case, which involved associational rights no less weighty than those at stake here, this Court found an attorneys-eyes-only protective order adequate to protect the labor union's First Amendment interests.  950 F.2d at 1463.   Indeed, this Court **enlarged** the number of attorneys who could obtain access to the documents under the protective order.  *Id*.

*Fourth*, the district court has identified the "motivations for supporting Prop. 8"  as relevant to its determination of Plaintiffs' equal protection claims.  Doc# 76 at 9.  Proponents put those facts squarely at issue by arguing affirmatively that the actual purposes behind Prop. 8 were neither invidious nor improper, and that any discrimination against gays and lesbians was merely an "unavoidable consequence of the traditional definition of marriage," Doc #172-1 at 87, but the district court

found that the obvious disconnect between the Yes on 8 campaign themes and the justifications suggested by Proponents in litigation counseled in favor of further factual development and against summary adjudication of Plaintiffs' equal protection challenge.  SER 107.  The district court's conclusion that the intent behind Prop. 8 is relevant to Plaintiffs' equal protection claims and properly the subject of judicial investigation rests on firm precedential ground.  *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *Seattle Sch. Dist. No. 1*, 458 U.S. at 484-85.[9]

And where, as here, intent may be relevant, the district court correctly recognized that "courts may look to the intent of the drafters of an initiative in determining the intent behind a measure enacted by voters."  RR 36 (citing *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 593-96 (8th Cir. 2003); *City of Los Angeles v. County of Kern*, 462 F. Supp. 2d 1105, 1114 (C.D. Cal. 2006)).

The Eighth Circuit considered a strikingly similar factual setting in *South Dakota Farm Bureau*.  In that case, the court considered whether the drafters of a referendum purposefully discriminated against interstate commerce.  340 F.3d at

---

[9] Proponents' reliance on *SASSO v. Union City*, 424 F.2d 291 (9th Cir. 1970), is misplaced.  Stay Mot'n 13-15.  *SASSO* is inapposite both because it did not concern a discovery dispute and because Plaintiffs are not seeking to discover the "'private attitudes of voters.'"  *Id.* at 13 (quoting *SASSO*).  That decision sheds no light on whether the beliefs of Prop. 8's official proponents—who orchestrated the campaign that placed Prop. 8 on the ballot and that eventually secured its approval by voters—are relevant to a determination of discriminatory purpose.  Furthermore, *SASSO* was decided in 1970, six years *before* the Supreme Court decided *Washington v. Davis*, which held that a neutral law with a racially disproportionate effect does not violate the Equal Protection Clause unless the disproportionate impact is attributable to a discriminatory purpose.  426 U.S. at 239-40.

593. The court observed that "[t]he most obvious [source of evidence] would be direct evidence that the drafters of Amendment E or the South Dakota populace that voted for Amendment E intended to discriminate against out-of-state businesses." *Id*. Accordingly, the Court reviewed both public and nonpublic materials, including notes from the amendment drafting meetings and testimony by individuals involved with the drafting of the proposed amendment, focusing on the "desire" of the drafters to prevent out-of-state entities from farming in South Dakota. *Id.*

Proponents attempt to distinguish *South Dakota Farm Bureau* on the ground that "[n]o First Amendment issue was raised with respect to the nonpublic materials." Stay Mot'n 16 n.8. That attempt fails because, whether or not a privilege argument was advanced, the decision establishes that such materials are probative of the intent with which an initiative was enacted. *See* 340 F.3d at 596-98; Doc # 214 at 14.[10]

Moreover, Proponents' limited view of the information that is relevant and discoverable is flatly inconsistent with the broad scope of discovery authorized by the Federal Rules of Civil Procedure. "Relevant information" for purposes of dis-

---

[10] Proponents rely on *Las Vegas v. Foley*, 747 F.2d 1294, 196-98 (9th Cir. 1984), but *Foley* involved a regulation enacted by a popularly elected legislature, not an initiative drafted by private parties and ratified by the voters. As the district court noted, in the context of an initiative, "the mix of information before and available to the voters forms a legislative history that may permit the court to discern whether the legislative intent of an initiative measure is consistent with and advances the governmental interest that its proponents claim in litigation challenging the validity of that measure or was a discriminatory motive." RR 37.

covery "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Furthermore, Proponents' myopic focus on a single issue—voter intent—ignores all other issues to which Plaintiffs' discovery requests may be relevant and other purposes for which the requested documents may be admissible. Stay Mot'n 14. Specifically, Plaintiffs' discovery requests are reasonably calculated to lead to the discovery of (1) admissible evidence concerning the rationality and strength of Proponents' purported state interests and whether voters could reasonably accept them as a basis for supporting Prop. 8, and (2) admissible evidence related to the factual disputes the district court identified as matters to be resolved at trial in its June 30, 2009 Order. Moreover, statements made by Proponents that are at odds with the positions they are taking in defense of Prop. 8 would not just be discoverable, but would be admissible at trial as a party admission or could be used as impeachment evidence. *See, e.g.*, Fed. R. Evid. 801(d). Proponents contention that the evidence Plaintiffs seek is irrelevant thus is unlikely to succeed on the merits.

### 2. Proponents Have Failed To Demonstrate That They Will Be Irreparably Harmed Without A Stay

A stay pending appeal would also be inappropriate because Proponents have not made the requisite showing of irreparable harm. As discussed above, any potential harm to Proponents from the disclosure of the campaign-related communications sought by Plaintiffs is alleviated by the district court's direction that the

parties negotiate a protective order limiting disclosure of Proponents' documents and that the names of Proponents' rank-and-file campaign volunteers be redacted. Proponents have made no showing—much less the strong showing required for a stay pending appeal—that harm will flow from the limited disclosure contemplated by the district court.

### 3.     The Balance Of Hardships Weighs In Plaintiffs' Favor

Proponents admit that Plaintiffs' vindication of their right to marry will be delayed if Proponents' motion is granted, but dismiss the harm of such delay with citation to inapposite case law and an offhanded request to "expedite these appeals." Stay Mot. 20. Proponents claim that a stay will not work a substantial harm on Plaintiffs, but their authority for this proposition arises in a dispute over money (*United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003), not a claim to vindicate individuals' fundamental constitutional rights. Proponents' one-line request to "expedite these appeals" is buried deep in their motion to stay; they have not sought expedited treatment as provided for in this Court's rules. 9th Cir. R. 27-12. Proponents seem to take no account of the fact that the Plaintiffs are irreparably harmed each day that they are prohibited from marrying.

When Plaintiffs' tangible constitutional harms are weighed against Proponents' subjective fears, the balance of equities tips decidedly in favor of affirming

the district court's decision to grant this targeted discovery. *Winter*, 129 S. Ct. at 376; *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987).[11]

## CONCLUSION

This Court should dismiss both appeals for lack of jurisdiction. In the alternative, it should deny Proponents' Motion for Stay.

Respectfully submitted.

Dated:  November 23, 2009

By   /s/ Theodore B. Olson

GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson
Matthew D. McGill
Amir C. Tayrani
1050 Connecticut Avenue, N.W. Washington, D.C.  20036
Telephone: (202) 955-8668
Facsimile: (202) 467-0539

Attorneys for Plaintiffs-Appellees
KRISTIN M. PERRY, SANDRA B. STIER, PAUL T. KATAMI, and JEFFREY J. ZARRILLO

---

[11]  Moreover, the public interest does not support a stay because, as the district court found, the "serious questions [] raised in these proceedings"  (Doc # 76 at 5) demonstrate the public's interest that they be promptly adjudicated on a full record. Doc #78 at 13.

**CERTIFICATE OF COMPLIANCE**

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached brief is proportionately spaced, has a typeface of 14 points, and that it complies with the page limitation established by this Court's order of November 20, 2009.

**STATEMENT OF RELATED CASES**

Appellees are aware of no related cases pending before this Court other than *Perry v. Proposition 8 Official Proponents*, No. 09-16959, which was identified in Appellants' Statement of Related Cases.  An opinion was issued in that case on November 19, 2009.

## CERTIFICATE OF SERVICE
## When All Case Participants are Registered for the
## Appellate CM/ECF System

I hereby certify that on (date) _____ , I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature _____

*************************************************************************

## CERTIFICATE OF SERVICE
## When <u>Not</u> All Case Participants are Registered for the
## Appellate CM/ECF System

I hereby certify that on (date) Nov 23, 2009 , I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Please see attached service list attachment.

Signature /s/Theodore B. Olson

# SERVICE LIST

Case Name: *Perry, et al. v. Campaign for California Families, et al.*
Case No:    U.S. Court of Appeals, Ninth Circuit, Case No. 09-17241
            (Consolidated with Case No. 09-17551 as of 11/19/09)

Andrew P. Pugno
THE LAW OFFICES OF ANDREW
  P. PUGNO
101 Parkshore Dr.
Folsom, CA 95630

Theodore H. Uno
BOIES, SCHILLER & FLEXNER
333 Main St.
Armonk, NY 10504

Nicole Moss
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036

Peter A. Patterson
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036

Alan L. Schlosser
ACLU FOUNDATION OF NORTHERN
CALIFORNIA INC.
39 Drumm St.
San Francisco, CA 94111

Howard C. Neilson, Jr.
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036

Matthew A. Coles
ACLU LGBT & AIDS Project
125 Broad St.
New York, NY 10004

Jon W. Davidson
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Ste. 1300
3325 Wilshire Blvd.
Los Angeles, CA 90010-1729