No. 09-17241

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
―――――――――――――――

KRISTIN M. PERRY, et al.,

*Plaintiffs-Appellees,*

v.

ARNOLD SCHWARZENEGGER, et al.,

*Defendants,*

and

PROPOSITION 8 OFFICIAL PROPONENTS
DENNIS HOLLINGSWORTH, et al.,

*Defendant-Intervenors-Appellants.*

―――――――――――――――

On Appeal From The United States District Court
For The Northern District Of California
Opinion Filed December 11, 2009
(Wardlaw, <u>Fisher</u>, Berzon)

―――――――――――――――――――――――――――――

## APPELLEES' PETITION FOR REHEARING AND REHEARING EN BANC
―――――――――――――――――――――――――――――

THEODORE J. BOUTROUS, JR.
THEANE EVANGELIS KAPUR
ENRIQUE A. MONAGAS
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7804

THEODORE B. OLSON
*Counsel of Record*
MATTHEW D. MCGILL
AMIR C. TAYRANI
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

*Attorneys for Plaintiffs-Appellees Kristin M. Perry, Sandra B. Stier,
Paul T. Katami, and Jeffrey J. Zarrillo*

## TABLE OF CONTENTS

STATEMENT PURSUANT TO FED. R. APP. P. 35(b)..........................................1

FACTUAL AND PROCEDURAL BACKGROUND .............................................3

REASONS FOR GRANTING REHEARING ........................................................9

    I.    THE PANEL'S ASSERTION OF APPELLATE JURISDICTION AND ITS ISSUANCE OF MANDAMUS RELIEF CONFLICT WITH THE SUPREME COURT'S DECISION IN *MOHAWK* ...........................................9

    II.   THE PANEL'S ISSUANCE OF MANDAMUS RELIEF CONFLICTS WITH DECISIONS THAT RESTRICT MANDAMUS TO TRULY "EXTRAORDINARY" ERRORS AND THAT ESTABLISH STRINGENT PREREQUISITES TO FIRST AMENDMENT PRIVILEGE CLAIMS.................14

CONCLUSION ...................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bauman v. U.S. Dist. Court*,
   557 F.2d 650 (9th Cir. 1977)......................................................... 8, 13, 15

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*,
   408 F.3d 1142 (9th Cir. 2005).................................................. 5, 8, 14, 18

*Cheney v. U.S. Dist. Court*,
   542 U.S. 367 (2004) ...................................................... 2, 3, 14, 15, 19

*City of Las Vegas v. Foley*,
   747 F.2d 1294 (9th Cir. 1984)..............................................................17

*Dole v. Serv. Employees Union AFL-CIO, Local 280*,
   950 F.2d 1456 (9th Cir. 1991)................................... 2, 11, 15, 16, 17, 18

*McLaughlin v. Serv. Employees Union AFL-CIO, Local 280*,
   880 F.2d 170 (9th Cir. 1989)......................................................... 15, 16

*Mohawk Indus., Inc. v. Carpenter*,
   No. 08-678, _ U.S. _ (Dec. 8, 2009)........................... 1, 2, 3, 7, 10, 11, 12, 13, 19

*Mothershed v. Justices of the Supreme Court*,
   410 F.3d 602 (9th Cir. 2005)..............................................................12

*N.Y. State Club Ass'n v. City of New York*,
   487 U.S. 1 (1988) ...............................................................................17

*Romer v. Evans*,
   517 U.S. 620 (1996) ...........................................................................16

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*,
   314 F.3d 995 (9th Cir. 2002)...............................................................18

*Will v. United States*,
   389 U.S. 90 (1967) .............................................................................19

**Constitutional Provisions**

Cal. Const. art. I, § 7.5 ..................................................................................4

**Statutes**

28 U.S.C. § 1651 ............................................................................... 1, 7, 8

## STATEMENT PURSUANT TO FED. R. APP. P. 35(b)

Plaintiffs Kristin M. Perry, Sandra B. Stier, Paul T. Katami, and Jeffrey J. Zarrillo respectfully petition for rehearing or rehearing en banc of the Panel's decision (attached as Ex. A).  Plaintiffs' suit challenges the constitutionality of California's Proposition 8 ("Prop. 8"), a voter-enacted initiative that stripped gay and lesbian individuals of their fundamental right to marry.  That suit is scheduled to go to trial in the Northern District of California on January 11, 2010—and thus no final judgment has been entered by the district court.  The Panel nevertheless held that it had jurisdiction under the collateral order doctrine and the All Writs Act, 28 U.S.C. § 1651, to reverse two nonfinal discovery orders that rejected First Amendment privilege claims asserted by Defendant-Intervenors Proposition 8 Official Proponents ("Proponents").

Rehearing is warranted because the Panel's opinion conflicts with the U.S. Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*, No. 08-678, _ U.S. _ (Dec. 8, 2009), which held that "[p]ostjudgment appeals . . . suffice to protect the rights of litigants" seeking review of nonfinal attorney-client privilege determinations and that the collateral order doctrine therefore does not confer appellate jurisdiction over such rulings.  *Mohawk* slip op. at 1.  *Mohawk*'s reasoning applies with equal force to the First Amendment privilege—which,

1

unlike the attorney-client privilege, is a ***qualified*** privilege—and thus categorically precludes collateral order jurisdiction over First Amendment privilege claims. *Mohawk* also eliminates the possibility of the "drastic and extraordinary remedy" of mandamus in connection with such claims (*Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted)), unless the petitioner can demonstrate that, unlike in *Mohawk*, "a [p]ostjudgment appeal[ ]" will ***not*** "suffice to protect [its] rights." *Mohawk* slip op. at 1. Proponents have not made that showing in this case.

 Rehearing is also necessary because the Panel relied on a declaration that it conceded was "lacking in particularity" when it issued mandamus relief to deny Plaintiffs access to relevant evidence. Panel slip op. at 33. That ruling conflicts with this Court's decision in *Dole v. Service Employees Union AFL-CIO, Local 280*, 950 F.2d 1456 (9th Cir. 1991), which held that a First Amendment privilege claim can only be sustained where the "record . . . contain[s] objective and articulable facts, which go beyond broad allegations or subjective fears" (*id.* at 1460 (internal quotation marks omitted)), and where "the information sought" is not "rationally related to a compelling governmental interest." *Id.* at 1461 (internal quotation marks omitted). Because the generalized and equivocal declaration produced by Proponents does not satisfy that standard—and because, as the Panel

2

itself recognized, "the information sought" was "reasonably calculated to lead to the discovery of admissible evidence" in support of Plaintiffs' constitutional challenge (Panel slip op. at 34)—*Dole* mandated the rejection of Proponents' privilege claim. At a minimum, that decision—and the absence of any precedent recognizing Proponents' novel invocation of the First Amendment privilege— establishes that, even if the district court's rulings were ultimately deemed to be incorrect, they did not amount to "a judicial usurpation of power or a clear abuse of discretion." *Cheney*, 542 U.S. at 380 (internal quotation marks omitted). The "drastic" remedy of mandamus was accordingly inappropriate. *Id.*

Consideration by the full Court is therefore necessary to secure and maintain the uniformity of this Court's decisions, to prevent "piecemeal, prejudgment appeals" from "undermin[ing] efficient judicial administration" (*Mohawk* slip op. at 5 (internal quotation marks omitted)), and to ensure that vague and generalized invocations of the First Amendment privilege are not used to shield relevant material from discovery.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this suit in the Northern District of California challenging the constitutionality of Prop. 8, a California constitutional amendment that provides that "[o]nly marriage between a man and a woman is valid or recognized in

California."  Cal. Const. art. I, § 7.5.  Plaintiffs contend that Prop. 8 violates the Due Process and Equal Protection Clauses of the United States Constitution because it impermissibly stripped gay and lesbian individuals of the right to marry previously recognized by the California Supreme Court and relegated them to the inherently unequal institution of domestic partnership.

In accordance with an expedited, fourteen-week discovery schedule established by the district court in advance of a January 11, 2010 trial date, Plaintiffs propounded discovery requests intended to investigate whether Prop. 8 was motivated in part by discriminatory and irrational views toward gay and lesbian individuals.  For example, Plaintiffs requested communications between Proponents and the managers of the Yes on 8 campaign in an effort to obtain information about the campaign strategy developed by Proponents and their public-relations consultants and, in particular, whether that strategy was intended to appeal to the moral disapproval that some voters may harbor toward gay and lesbian relationships.

When propounding these requests, Plaintiffs made clear that they were willing to agree to an "attorneys-eyes only" protective order and the redaction of the names of Proponents' rank-and-file volunteers.  Proponents nevertheless resisted Plaintiffs' discovery requests, and sought a protective order from the

district court that prohibited ***any*** discovery into ***any*** documents or communications concerning Prop. 8 unless Proponents had already made those documents available to the public at large.  Proponents further argued that the discovery sought by Plaintiffs was irrelevant and that it was privileged from disclosure under the First Amendment.

On October 1, 2009, the district court rejected Proponents' First Amendment privilege claim both on the merits and on the ground that Proponents had failed to produce a privilege log, "a necessary condition to preservation of any privilege." Doc # 214 at 9; *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).  The court did determine, however, that one of Plaintiffs' discovery requests was "overly broad" because it requested communications relating to Prop. 8 between Proponents and any third party. Doc # 214 at 17.  In accordance with the court's direction that Plaintiffs "revise th[at] request and tailor it to relevant factual issues" (*id.*), Plaintiffs served a narrowed version of that request that was limited to Prop. 8-related communications between Proponents and their campaign consultants, strategists,

and agents.[1]

Proponents thereafter submitted for the district court's *in camera* review a sample of 60 specific documents that they claimed to be responsive to the now-narrowed request but privileged under the First Amendment.  After undertaking a careful document-by-document review, the district court issued an order on November 11, 2009, that found that the "qualified First Amendment privilege does not provide the documents much, if any, protection against disclosure."  Doc # 252 at 2.  Applying a more exacting responsiveness test than usually governs under Rule 26(b), however, the court found that 39 of those documents were "not responsive" and therefore not discoverable because they fell at or beyond the "margin of potentially responsive discovery."  *Id.* at 6, 8, 9.  The court directed Proponents to produce the other 21 documents, which it found to be "responsive" to Plaintiffs' discovery request.  *Id.* at 4.  Proponents nevertheless persisted in their refusal to produce the responsive documents, and Magistrate Judge Spero therefore

---

[1]  The revised request sought production of documents "that constitute analyses of, or communications related to, . . . (1) campaign strategy in connection with Prop. 8; and (2) messages to be conveyed to voters regarding Prop. 8," but was "limited to those who (1) had any role in managing or directing ProtectMarriage.com or the Yes on 8 campaign, or (2) provided advice, counseling, information, or services with respect to efforts to encourage persons to vote for Prop. 8 or otherwise educate persons about Prop. 8."  Letter from Ethan D. Dettmer to Nicole J. Moss at 1, 2 (Oct. 5, 2009).

entered a subsequent order that required Proponents to produce the documents by November 30, 2009, and directed the parties to negotiate a protective order limiting their dissemination.  Doc # 259 at 5-6.

Proponents noticed interlocutory appeals on the purported basis of the collateral order doctrine and, in the alternative, petitioned for writs of mandamus from the district court's October 1 and November 11 discovery orders.  After consolidating those appeals and granting a temporary stay of the district court's orders, the Panel reversed and, exercising jurisdiction under both the collateral order doctrine and the All Writs Act, 28 U.S.C. § 1651, directed the district court to enter a protective order shielding Proponents from any discovery of their "private, internal campaign communications."  Panel slip op. at 36 n.12.[2]

In so ruling, the Panel acknowledged that, "[w]hile this appeal was pending, the Supreme Court decided *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. _ (Dec. 8, 2009), holding that discovery orders concerning the attorney-client privilege are not appealable under the collateral order doctrine."  Panel slip op. at 10.  The Panel conceded that, in light of *Mohawk*, the existence of appellate jurisdiction was "a

---

[2]  Proponents have since taken the position that "private, internal campaign communications" include any communications that did not go "to the electorate at large or to discrete groups of voters" even if those communications were widely disseminated to Proponents' "political associates."  Doc # 314 at 15.

7

close question" and that at least "[s]ome of *Mohawk*'s reasoning carries over to the First Amendment privilege." *Id.* The Panel was nevertheless "inclined to believe that the First Amendment privilege is distinguishable from the attorney-client privilege" and that, notwithstanding *Mohawk*, the collateral order doctrine affords appellate jurisdiction over interlocutory orders denying First Amendment privilege claims. *Id.* at 13.

In the alternative, the Panel held that it had mandamus jurisdiction under the All Writs Act, 28 U.S.C. § 1651, and that the prerequisites to the "'extraordinary remedy'" of mandamus identified by this Court in *Bauman v. United States District Court*, 557 F.2d 650 (9th Cir. 1977), had been satisfied. Panel slip op. at 15 (quoting *Burlington N.*, 408 F.3d at 1146). The Panel held that in the absence of mandamus relief, Proponents would be "damaged or prejudiced in . . . [a] way not correctable on appeal." *Id.* at 16. According to the Panel, a "post-judgment appeal would not provide an effective remedy, as no such review could prevent the damage that [Proponents] allege they will suffer or afford effective relief therefrom." *Id.* at 18 (internal quotation marks omitted).

The Panel further concluded that, insofar as the district court's discovery orders permitted discovery of Proponents' private, internal campaign communications, they represented "clear error." Panel slip op. at 20. According to

the Panel, Proponents made "a *prima facie* showing of arguable first amendment infringement" by submitting a declaration from a member of ProtectMarriage.com's ad hoc executive committee that—while "lacking in particularity"—"create[d] a reasonable inference that disclosure would have the practical effects of discouraging political association and inhibiting internal campaign communications" in the future. *Id.* at 32, 33. Mandamus was appropriate, the Panel concluded, because Plaintiffs had failed "to demonstrate a sufficiently compelling need for the discovery to counterbalance that infringement." *Id.* at 34. The Panel ordered that "extraordinary" remedy even though it acknowledged that "the First Amendment interests at stake here are not as weighty as in some . . . [other] cases," that the "harms can be mitigated in part by entry of a protective order," and that "plaintiffs have shown that the information they seek is reasonably calculated to lead to the discovery of admissible evidence." *Id.* at 36.

## REASONS FOR GRANTING REHEARING

I. **THE PANEL'S ASSERTION OF APPELLATE JURISDICTION AND ITS ISSUANCE OF MANDAMUS RELIEF CONFLICT WITH THE SUPREME COURT'S DECISION IN *MOHAWK*.**

The Panel was "inclined to conclude that" it possessed "jurisdiction under the collateral order doctrine" to review the district court's nonfinal discovery

9

orders; in the alternative, the Panel held that mandamus relief was appropriate because a "post-judgment appeal would not provide an effective remedy" for an erroneous order compelling disclosure of privileged information.  Panel slip op. at 15, 18.  Both aspects of the Panel's jurisdictional reasoning conflict with *Mohawk*.

In *Mohawk*, the Supreme Court held that the collateral order doctrine does not provide appellate courts with jurisdiction over nonfinal district court orders denying attorney-client privilege claims because such orders are not "effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk* slip op. at 4-5 (internal quotation marks omitted).  The Court explained that district court orders denying attorney-client privilege claims do not fall with the "small class of collateral rulings" that are "deemed 'final'" for appellate purposes because "[p]ostjudgment appeals . . . suffice to protect the rights of litigants and preserve the vitality of the attorney-client privilege."  *Id.* at 1-2, 4 (internal quotation marks omitted).  The Court reasoned that "[a]ppellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings:  by vacating an adverse judgment and remanding for a new trial."  *Id.* at 8.  Furthermore, district courts could use "protective orders . . . to limit the spillover effects of disclosing sensitive information."  *Id.* at 11.  "Permitting piecemeal, prejudgment appeals" is not

10

warranted, however, because such appeals "undermine[ ] 'efficient judicial administration' and encroach[ ] upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." *Id.* at 5.

Both the Panel's decision to exercise appellate jurisdiction in this case, and its issuance of mandamus relief, directly conflict with *Mohawk*. The Supreme Court's holding that the collateral order doctrine does not extend to attorney-client privilege claims applies with equal (if not greater) force to the First Amendment privilege—which, unlike absolute privileges such as the attorney-client privilege, is a ***qualified*** privilege that involves a balancing test and thus can be overcome where a party's interest in obtaining discovery outweighs the First Amendment interests at stake. *See Dole v. Serv. Employees Union AFL-CIO, Local 280*, 950 F.2d 1456, 1461 (9th Cir. 1991). Just as "[p]ostjudgment appeals . . . suffice to protect the rights of litigants and preserve the vitality of the attorney-client privilege" (*Mohawk* slip op. at 1-2), appeals after judgment—together with appropriately fashioned protective orders—"suffice to protect the rights" of a party whose First Amendment privilege claim is denied by a district court. Indeed, in this case, Plaintiffs were willing to agree to an "attorneys-eyes only" protective order and the redaction of the names of Proponents' rank-and-file volunteers, which would have drastically restricted the dissemination of the discoverable

11

materials and preserved Proponents' ability to vindicate their purported First Amendment rights "in the same way" that other "erroneous evidentiary rulings" are challenged—through a postjudgment appeal.  *Id.* at 8.

The Panel's narrow reading of *Mohawk* provides litigants with a roadmap for circumventing that decision's limitations on the collateral order doctrine and inundating this Court with interlocutory appeals of nonfinal privilege determinations.  In light of the vast breadth of the First Amendment's protections, litigants seeking interlocutory review of a district court's denial of a privilege claim now need only recast that claim as one based on the First Amendment. Indeed, it is well-established that the attorney-client relationship is protected by the First Amendment.  *See Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 611 (9th Cir. 2005) ("the right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech") (internal quotation marks omitted). Under the Panel's reasoning, a party resisting discovery of communications with his attorney could secure immediate appellate review of a district court ruling by simply arguing that the communications in question are privileged under the First Amendment.  The delay, disruption, and inefficiency that would inevitably be generated by such an expansion of the collateral order doctrine

is starkly evident from this appeal—which remains pending in this Court less than three weeks before Plaintiffs' claims are scheduled to go to trial.

The Panel's issuance of mandamus relief is equally at odds with *Mohawk*. As the Panel recognized, mandamus relief is only appropriate where "the petitioner will be damaged or prejudiced in any way not correctable on appeal." Panel slip op. at 16 (quoting *Bauman*, 557 F.2d at 654). But, *Mohawk* explicitly held that "[p]ostjudgment appeals . . . suffice to protect the rights of litigants" who are asserting a privilege claim. *Mohawk* slip op. at 1. Mandamus is therefore unavailable to remedy an erroneous privilege ruling—except in truly exceptional cases where disclosure of the information would cause immediate and irreparable harm beyond the disclosure itself (such as physical reprisals against a confidential police informant or media source, or threats to national security), and where the district court has refused to enter a suitable protective order to ameliorate that harm. Proponents did not satisfy those prerequisites to mandamus relief here, where the information sought by Plaintiffs would be viewed by "attorneys-eyes only" and where any unwarranted chilling effect that disclosure might have on Proponents' future First Amendment activities could be remedied by a postjudgment appellate ruling upholding Proponents' privilege claim.

13

## II. THE PANEL'S ISSUANCE OF MANDAMUS RELIEF CONFLICTS WITH DECISIONS THAT RESTRICT MANDAMUS TO TRULY "EXTRAORDINARY" ERRORS AND THAT ESTABLISH STRINGENT PREREQUISITES TO FIRST AMENDMENT PRIVILEGE CLAIMS.

The Panel held that the district court had committed "clear error" when it denied Proponents' privilege claims—and that mandamus relief was therefore appropriate—because Proponents made "a *prima facie* showing of arguable first amendment infringement" and Plaintiffs had failed "to demonstrate a sufficiently compelling need for the discovery to counterbalance that infringement." Panel slip op. at 32, 34 (internal quotation marks omitted). The Panel's issuance of mandamus relief disregards the significant restrictions that both the Supreme Court and this Court have imposed on the availability of mandamus, as well as the demanding showing that a party must make to succeed on a First Amendment privilege claim.

Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted). "[O]nly exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of" mandamus. *Id.* (internal quotation marks omitted). The party seeking mandamus must make a "'clear and indisputable'" showing that these "exceptional circumstances" are present (*Burlington N.*, 408 F.3d at 1146 (quoting

14

*Cheney*, 542 U.S. at 381)), including by demonstrating that "the district court's order is 'clearly erroneous as a matter of law.'" *Id.* (quoting *Bauman*, 557 F.2d at 654-55).

Proponents did not come close to making the "extraordinary" showing that must be made to obtain mandamus relief. Indeed, the rejection of Proponents' privilege claims was compelled by this Court's precedent defining the scope of that privilege.

This Court has made clear that "[b]are allegations of possible first amendment violations are insufficient to justify" a First Amendment privilege claim. *McLaughlin v. Serv. Employees Union AFL-CIO, Local 280*, 880 F.2d 170, 175 (9th Cir. 1989). The record must instead contain "objective and articulable facts, which go beyond broad allegations or subjective fears." *Id.* (internal quotation marks omitted). Applying that standard, the Court held in *Dole* that a union had made the requisite First Amendment showing by submitting two letters from members who made absolutely clear that "they could no longer attend meetings" if the minutes of those meetings were disseminated to government officials. 950 F.2d at 1460; *see also id.* (quoting one of the letters, which stated that "I will not attend or participate at all membership and executive board meetings" if the minutes are disclosed).

15

In this case, in contrast, the Panel relied on a declaration from a member of ProtectMarriage.com's ad hoc executive committee that the Panel acknowledged to be "lacking in particularity" to uphold Proponents' First Amendment privilege claim. Unlike the letters submitted in *Dole*—which expressed the union members' unequivocal intention not to attend meetings in the future if their meeting minutes were disclosed (950 F.2d at 1460)—the declaration on which the Panel relied offered only the equivocal statement that, if discovery were permitted regarding Proponents' private, internal campaign communications, the declarant would be "less willing to engage in [similar] communications" in the future and "would have to seriously consider whether to even become an official proponent again." Panel slip op. at 32, 33.

Such indefinite and uncertain allegations "of possible first amendment violations" fall far short of the "objective and articulable facts" required to sustain invocation of the First Amendment privilege (*McLaughlin*, 880 F.2d at 175) and to shield from discovery materials that the Panel itself described as "admissible evidence on the issues of voter intent and the existence of a legitimate state interest." Panel slip op. at 34; *see also Romer v. Evans*, 517 U.S. 620, 634 (1996) (a "bare . . . desire" by voters "to harm a politically unpopular group cannot constitute a legitimate governmental interest") (internal quotation marks and

16

emphasis omitted).  The district court's denial of Proponents' privilege claims was therefore not only consistent with—but was actually ***required*** by—this Court's precedent.[3]

The Panel's opinion further conflicts with, or at least significantly expands on, *Dole* because, under the controlling standard established in that decision, a party seeking discovery can rebut a *prima facie* case for First Amendment protection where "the information sought . . . is rationally related to a compelling governmental interest."  950 F.2d at 1461 (internal quotation marks omitted; alteration in original).  Plaintiffs satisfied that standard because they have a compelling interest in vindicating their due process and equal protection rights abridged by Prop. 8 (*see N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 n.5 (1988)), and because, as the Panel itself recognized, Plaintiffs' discovery "request is reasonably calculated to lead to the discovery of admissible evidence" in support of Plaintiffs' constitutional challenge.  Panel slip op. at 34.  The Panel

---

[3]  In light of the Panel's acknowledgment that the discovery sought by Plaintiffs would lead to "admissible evidence . . . on the issue of voter intent," this Court's decision in *City of Las Vegas v. Foley*, 747 F.2d 1294 (9th Cir. 1984), does not support its issuance of mandamus.  In *Foley*, the Court ordered mandamus to bar discovery into ***legislators'*** subjective intentions precisely because the plaintiff had not demonstrated that the disputed discovery would "provide relevant and needed information to support its [constitutional] challenge."  *Id.* at 1297.

nevertheless sustained Proponents' privilege claim on the ground that Plaintiffs had "not shown a sufficiently compelling need for the information." *Id.* at 36. That "compelling need" standard cannot be reconciled with *Dole*'s holding that a *prima facie* First Amendment privilege claim can be rebutted whenever there is a "***rational[ ] relationship***" between the discovery request and a "compelling governmental interest." 950 F.2d at 1461 (emphasis added; internal quotation marks omitted). Whatever its merits, the Panel has established a new First Amendment standard in this Circuit, and it cannot have been "clear error" for the district court to have failed to anticipate that new standard.

Moreover, even if Proponents had established that the district court's application of *Dole* was incorrect, that error would be far from the "indisputable" showing of "clear error" required to warrant the "extraordinary" remedy of mandamus. *Burlington N.*, 408 F.3d at 1146 (internal quotation marks omitted). "District courts have wide latitude in controlling discovery" (*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002)), and, in exercising that discretion in complex cases, are often required to make dozens of decisions (many of them on short notice) to resolve discovery disputes between the parties. The fact that this Court may ultimately disagree with the district court's application of one of its precedents to a novel discovery issue does not mean that

18

the aggrieved party is entitled to the "drastic" remedy of mandamus to correct that decision.  *See Will v. United States*, 389 U.S. 90, 104 (1967) ("Mandamus . . . does not run the gauntlet of reversible errors.") (internal quotation marks omitted).  Like a broad application of the collateral order doctrine, such permissive issuance of mandamus relief would "unduly delay the resolution of district court litigation and needlessly burden the Courts of Appeals."  *Mohawk* slip op. at 11.

Here, neither the Panel nor Proponents identified ***any*** precedent from ***any*** court that upheld the novel First Amendment privilege claim advanced by Proponents.  Moreover, the Panel itself recognized that "the First Amendment interests at stake here are not as weighty as in some . . . [other] cases," that the "harms can be mitigated in part by entry of a protective order," and that "plaintiffs have shown that the information they seek is reasonably calculated to lead to the discovery of admissible evidence."  Panel slip op. at 34, 36.  Together with the absence of precedent contradicting the district court's rulings, these concessions are more than sufficient to demonstrate that, even if the district court was incorrect, its rulings do not amount to the "judicial usurpation of power" or the "clear abuse of discretion" that alone "will justify the invocation of" mandamus.  *Cheney*, 542 U.S. at 380.

# CONCLUSION

This Court should grant rehearing or rehearing en banc.

Dated:  December 24, 2009

By   /s/ Theodore B. Olson

GIBSON, DUNN & CRUTCHER LLP
Theodore B. Olson
Matthew D. McGill
Amir C. Tayrani
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8668
Facsimile: (202) 467-0539

Theodore J. Boutrous, Jr.
Theane Evangelis Kapur
Enrique A. Monagas
333 S. Grand Avenue
Los Angeles, California  90071
Telephone: (213) 229-7804
Facsimile: (213) 229-7520

Attorneys for Plaintiffs-Appellees
KRISTIN M. PERRY, SANDRA B. STIER,
PAUL T. KATAMI, and JEFFREY J.
ZARRILLO

## CERTIFICATE OF COMPLIANCE WITH
## CIRCUIT RULES 35-4 AND 40-1

I certify that pursuant to Circuit Rules 35-4 and 40-1 the attached petition for

rehearing and rehearing en banc is:

_X_  Proportionately spaced, has a typeface of 14 points, and contains 4,159

words.

Dated:  December 24, 2009

By   /s/ Theodore B. Olson

# CERTIFICATE OF SERVICE
## When All Case Participants are Registered for the
## Appellate CM/ECF System

I hereby certify that on (date) ⬚ , I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature ⬚

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# CERTIFICATE OF SERVICE
## When Not All Case Participants are Registered for the
## Appellate CM/ECF System

I hereby certify that on (date) Dec 24, 2009 , I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Please see attached service list attachment.

Signature /s/Theodore B. Olson

# SERVICE LIST

Case Name: *Perry, et al. v. Hollingsworth, et al.*
Case No:    U.S. Court of Appeals, Ninth Circuit, Case No. 09-17241
            (Consolidated with Case No. 09-17551 as of 11/19/09)

Andrew P. Pugno
THE LAW OFFICES OF ANDREW
  P. PUGNO
101 Parkshore Dr., Suite 100
Folsom, CA 95630

Nicole Moss
Howard C. Neilson, Jr.
Peter A. Patterson
David H. Thompson
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036

Alan L. Schlosser
Elizabeth O. Gill
ACLU FOUNDATION OF NORTHERN
CALIFORNIA INC.
39 Drumm St.
San Francisco, CA 94111

Jon W. Davidson
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Ste. 1300
3325 Wilshire Blvd.
Los Angeles, CA 90010-1729

Matthew A. Coles
ACLU LGBT & AIDS Project
125 Broad St.
New York, NY 10004

Stephen V. Bomse
ORRICK, HERRINGTON &
SUTCLIFFE, LLP
405 Howard Street
San Francisco, CA  94105-2669